This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Andrea Jewells, appeals from the decision of the Oberlin Municipal Court. We affirm.
{¶ 2} On August 29, 2001, Ms. Jewells was charged with theft, in violation of R.C. 2913.02. The case was set for trial and, on January 16, 2002, a bench trial was held on the matter. Ms. Jewells was found guilty of theft as charged and was sentenced accordingly. This appeal followed.
{¶ 3} Ms. Jewells raises one assignment of error:
 {¶ 4} "THE VERDICT OF THE TRIAL COURT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
{¶ 5} In her assignment of error, Ms. Jewells asserts that her conviction was against the manifest weight of the evidence. We disagree.
{¶ 6} When determining whether a conviction was against the manifest weight of the evidence,
 {¶ 7} "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
{¶ 8} This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
{¶ 9} In order to find Ms. Jewells guilty of theft, the prosecution needed to prove the elements which are set forth in R.C.2913.02(A) as follows:
 {¶ 10} "No person, with purpose to deprive the owner of property * * *, shall knowingly obtain or exert control over * * * the property * * * in any of the following ways:
 {¶ 11} "(1) Without the consent of the owner or person authorized to give consent;
 {¶ 12} "(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
{¶ 13} "(3) By deception;
{¶ 14} "(4) By threat;
{¶ 15} "(5) By intimidation."
{¶ 16} In the present case, Scott Sullivan testified that, on August 29, 2001, he was in the manager's office at the Amherst Giant Eagle store monitoring the cash registers. Mr. Sullivan explained that, from the manager's office, he could watch a video camera monitor of the employees using the cash registers and ensure that customer's items were properly scanned through the machines.
{¶ 17} Mr. Sullivan testified that he watched Ms. Jewells as she scanned a customer's items through the laser scanner portion of the cash register machine, whereupon, he checked the total purchase price appearing on the cash register. He also testified that he immediately knew that the purchase price of $45.00 appearing on the cash register was wrong. Mr. Sullivan stated that he then watched as the customer paid Ms. Jewells $50.00, received change, and began to leave the cash register area with his bagged groceries. Mr. Sullivan testified that he stopped the customer just as the customer was stepping onto the exit mat that had automatically opened the doors of the store. The groceries in the customer's cart totaled $310.80.
{¶ 18} Mr. Sullivan explained that he commonly observes grocery store clerks through a video camera setup and that it is very apparent if a clerk is having trouble with the laser scanner portion of the cash register machine. If a clerk has trouble scanning, he or she will not hear a beeping sound that is made when a customer's item is scanned over the laser portion of the machine. Mr. Sullivan stated that a clerk who is having trouble will usually attempt to scan an item several times and then, if the machine is still not working, the clerk will stop scanning items and will notify the front-end coordinator that there is a problem with the machine. He explained that he did not believe that Ms. Jewells had been having problems with her cash register scanner because she was not acting like anything was wrong. Specifically, she never attempted to rescan any of the customer's items and never asked for assistance.
{¶ 19} Ross Kyker testified that he is currently in high school but that he used to work at the Amherst Giant Eagle. Mr. Kyker also testified that, on the day in question, he was bagging groceries at Ms. Jewells' cash register. According to Mr. Kyker, Ms. Jewells had informed someone at customer service that her register was not working properly. Ms. Jewells was told to continue working at her register but that she should let customer service know if there were any other problems. Later, Ms. Jewells discussed the problem relating to her cash register with Mr. Kyker and asked him if he would open a different register. Mr. Kyker testified that he was not able to open another register because the customer service person gave him a task to perform elsewhere in the grocery store.
{¶ 20} In reference to the incident, Mr. Kyker testified that approximately halfway through the customer's items, Ms. Jewells was experiencing problems with her cash register. Mr. Kyker stated that Ms. Jewells informed the customer that there was a problem with regard to his receipt and that the customer needed to take his groceries over to customer service. Mr. Kyker explained that the customer stated that there were a lot of people in that area and asked Ms. Jewells if he could go to customer service via a route that would take him out of the area through a set of doors. Ms. Jewells agreed but told Mr. Kyker to watch the customer to ensure that he went to customer service. Thereafter, the customer was stopped by Mr. Sullivan.
{¶ 21} Mr. Kyker testified that he knows what the term "short ringing" means, explaining that a cashier does not ring up all of the items possessed by a customer so that the customer can acquire items that he or she did not purchase. He stated that he did not believe that Ms. Jewells had done this, noting that it did not appear that Ms. Jewells and the customer knew each other. When asked, Mr. Kyker explained that, at times when he had worked at the cash register, he would not have accepted a partial payment if his cash register was not working because he would refer the problem to customer service. Mr. Kyker testified that he had not seen the customer paying Ms. Jewells for the items he purchased.
{¶ 22} After a careful review of the record, we cannot conclude that the trier of fact lost its way and created a manifest miscarriage of justice when it convicted Ms. Jewells of theft. Although conflicting testimony was presented, we refuse to overturn the verdict because the trier of fact believed other testimony. "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the [trier of fact] believed the prosecution testimony." State v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757. Accordingly, we hold that Ms. Jewell's conviction was not against the manifest weight of the evidence.
{¶ 23} Ms. Jewells' assignment of error is overruled. The judgment of the Oberlin Municipal Court is affirmed.
SLABY, P.J., WHITMORE, J. CONCUR.